Allan RUSENSTROM, Appellant,

v.

Carrie S. RUSENSTROM, Appellee.

Nos. S–8118.

Supreme Court of Alaska.

June 4, 1999.

Rehearing Denied July 16, 1999.

Jennifer L. Holland and Max F. Gruenberg, Jr., Gruenberg and Clover, Anchorage, for Appellant.

Cris W. Rogers and David S. Houston, Houston & Houston, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

When Carrie and Allan Rusenstrom divorced, the court awarded Carrie custody of their two daughters. It later ordered Allan to provide his daughters with health insurance through a policy funded by his employer. Although Alaska Civil Rule 90.3(d)(1) allowed Allan's child support to be reduced by half of the cost he actually paid for this coverage, the court declined to grant any reduction, finding that he had failed to prove what cost he actually paid. We reverse this decision because Allan lost more than $300 in monthly pension contributions by insuring his daughters; this is an actual payment of coverage costs. The court also declined Allan's request to claim one of his daughters as a tax exemption. We affirm this decision because Allan alleged no material change in circumstances to justify this request.

## I. FACTS AND PROCEEDINGS

Carrie and Allan Rusenstrom married on August 10, 1985, and had two children, Kristen and Kaylee, before the marriage ended in divorce in June 1994. The court awarded Carrie primary physical custody of the girls and ordered Allan to pay monthly support under the guidelines established by Alaska Civil Rule 90.3. The court did not direct either parent to provide health insurance for the girls. Allan nonetheless maintained health insurance for them under an employer-funded policy that was available to him as a member of the International Brotherhood of Electrical Workers. The court also did not decide which parent would be entitled to claim the girls as dependents for tax purposes. Carrie, as custodial parent, claimed them as her dependents.[1]

More than two years after the divorce, Allan moved to modify the child support order, seeking credit against his child support obligation for half the cost of insuring his daughters. He also asked to be allowed to claim one of his daughters as a tax exemption.

The superior court amended the child support order to require that Allan provide health insurance for his daughters, but it denied him any credit for paying the cost of coverage. The court also denied Allan's request for an exemption as to one of his daughters.

Allan appeals.

## II. DISCUSSION

A. The Superior Court Erred in Denying Allan a Child Support Credit for Maintaining Health Insurance for Kristen and Kaylee.

After the Rusenstroms divorced, this court amended Alaska Civil Rule 90.3(d) to require divorcing parents to provide their children with health care insurance if it is available. Under the amended rule, parents must ordinarily share the cost of the insurance, and if the non-custodial parent pays for the coverage, the non-custodial parent is entitled to a child support credit for the custodial parent's share of the payment.[2]

---

1. Federal law provides that, when a child's parents divorce, the custodial parent is ordinarily entitled to claim the child as a dependent. *See* 26 U.S.C.A. § 152(e) (West Supp.1998).

2. As amended, Civil Rule 90.3(d)(1) reads in part:

    The court shall address coverage of the children's health care needs and require health insurance for the children if insurance is avail-

Although the Rusenstroms' original child support order did not address the topic of insurance, Allan voluntarily provided medical coverage for his daughters. On August 30, 1996, after Rule 90.3(d) was amended, he moved to modify the support order to allocate to Carrie half the cost of this insurance. Claiming that the girls' coverage cost him $339.20 per month, Allan requested a monthly child support credit of $169.60 (one half of the claimed actual cost).

Following a hearing, the superior court ordered Allan to provide health insurance for his daughters, finding that "[t]he parties' two minor children are in need of health care coverage by insurance" and that "[t]he necessary health care coverage for the children is available to Allan under the collective bargaining agreement between IBEW and his employer." But the court further found that "Allan ha[d] failed to offer any admissible evidence . . . [of] the cost necessary to insure the two children." It thus denied him any credit for the cost of maintaining this insurance.

Allan challenges this ruling, arguing that he presented admissible evidence proving that his actual monthly cost for insuring his daughters amounts to $339.20. In response, Carrie maintains that Allan should receive no credit, since his employer actually pays for the coverage. Alternatively, she claims that

Allan failed to prove that the girls' insurance is necessary.

1. *Standard of review*

■ We review rulings admitting or excluding evidence for abuse of discretion.[3] We review factual findings for clear error.[4] But in determining how legal doctrine applies to undisputed facts, we rule de novo, without deference to the trial court's judgment.[5]

2. *The admissibility of Allan's evidence of added cost*

■ To support his claim that insuring Kaylee and Kristen cost him $339.20 per month, Allan presented the affidavit of Donald Parks (with attached exhibits) and his own affidavit. At the hearing on Allan's motion, Carrie did not argue that this evidence was inadmissible. The court nevertheless found that Allan had "failed to offer any admissible evidence that the sum of $339.20 is the cost necessary to insure the two children." The court's reference to inadmissibility suggests that it denied Allan's motion because his affidavits contained hearsay. Allan persuasively disputes this ruling.

■ Absent a proper objection, hearsay is normally admissible.[6] Here, Carrie raised no hearsay objection. Moreover, the trial court did not suggest that it considered the evidence to be problematic on this ground.[7]

---

able to either parent at a reasonable cost. . . . The court shall allocate equally the cost of this insurance between the parties unless the court orders otherwise for good cause. An obligor's child support obligation will be decreased by the amount of the obligee's portion of health insurance payments ordered by the court and actually paid by the obligor.

3. *See Williams v. Utility Equip. Inc.*, 837 P.2d 1112, 1115 (Alaska 1992).

4. *See Murphy v. Murphy*, 812 P.2d 960, 962–63 (Alaska 1991); *Larman v. Kodiak Elec. Ass'n*, 514 P.2d 1275, 1278 (Alaska 1973). A finding is clearly erroneous when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been made. *Kodiak Elec.*, 514 P.2d at 1278.

5. *See D.L.M. v. M.W.*, 941 P.2d 900, 902 n. 2 (Alaska 1997); *see also Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992)

(quoting *Foss Alaska Line, Inc. v. Northland Servs., Inc.*, 724 P.2d 523, 526 (Alaska 1986)).

6. *See* Alaska R. Evid. 103; *Bird v. Starkey*, 914 P.2d 1246, 1248 n. 1 (Alaska 1996); *see also* 1 John W. Strong, *McCormick on Evidence* § 55, at 221 (4th ed.1992) (failure to object is a waiver). *Cf. Byrd v. State*, 626 P.2d 1057, 1058 (Alaska 1980) (noting that hearsay evidence that is not objected to is admissible); *Cassell v. State*, 645 P.2d 219, 220–21 (Alaska App.1982) (same).

7. In *Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996), we held that a trial court may make sua sponte evidentiary objections. But we did not suggest that the court may exclude evidence sua sponte without affording the parties prior notice of its intent to do so. Unnoticed evidentiary rulings of this kind are disfavored "to prevent unfairness, in that, if the counsel offering the testimony were made aware of the objection to the testimony at the time, he would have had an opportunity to cure it." 1 John W. Strong, *McCormick on Evidence* § 55, at 224–25 n. 20

To the contrary, when Allan offered to call Parks as a witness during the hearing on his motion, the court indicated that his testimony was unnecessary.[8] Given these circumstances, if the trial court denied Allan's motion on the ground that his evidence of added cost was inadmissible hearsay, the court abused its discretion.

Carrie offers an alternative explanation for the trial court's ruling, suggesting that, in finding no admissible evidence of "the cost necessary to insure the two children," the court meant to say that Allan had failed to prove that the insurance package he had chosen was actually necessary to meet the children's needs.

But this argument misconstrues the trial court's order, which directs Allan to continue providing the coverage precisely because it is "necessary health care coverage for the children [and] is available to Allan under the collective bargaining agreement." In finding that Allan failed to show that $339.20 was the "cost necessary" to insure the girls, the court echoed the words of the commentary to Civil Rule 90.3(d)(1), which it had quoted in its decision. The commentary explains that the rule's cost-sharing provision "is limited to that portion of the total cost necessary to insure the children involved—not the parent, the parent's new spouse or children of another relationship." [9] The court's reference to this commentary makes it obvious that it found Allan's evidence deficient not in failing to prove the need for the provided coverage, but in failing to prove the cost that was allocable to his daughters.

### 3. Sufficiency of the added cost evidence

The remaining question is whether, considering his hearsay evidence, Allan presented substantial evidence that his monthly cost for insuring his daughters was $339.20. The evidence on this point is essentially undisputed. Parks's affidavit establishes that Allan receives a Health and Welfare Plan (H & W) benefit from his employer of about $756 per month. This benefit is used by his union to purchase insurance for Allan and, at Allan's option, for his family. Allan's selection of the premium insurance plan, which extends coverage to his family, results in the entire H & W benefit being applied toward insurance coverage. But if Allan purchased health insurance for himself alone, forty-eight percent of his H & W benefit would be paid into his Money Purchase Pension Plan (MPPP), which becomes available to him upon retirement.

Thus, were Allan to insure himself but not his family, the cost of his insurance would be about $393; the remaining $363 (forty-eight percent of $756) per month of his H & W benefit would be paid into his MPPP. Allan has selected the premium insurance, so that none of the H & W benefit goes into his MPPP. In so doing he forgoes a monthly benefit of about $363.[10] Carrie offered no conflicting evidence. Her only witness, Gregory Stokes, corroborated Parks's affidavit. Stokes testified that he was familiar with Allan's benefits package; he confirmed that if Allan did not insure the girls, a portion of Allan's H & W benefit would be paid into his MPPP.

■ In fact, Carrie apparently did not call Stokes to dispute Allan's evidence concerning

---

(4th ed.1992) (quoting *Electric Park Amusement Co. v. Psichos*, 83 N.J.L. 262, 83 A. 766, 768 (1912)); *see also Thomson v. Wheeler Const. Co.*, 385 P.2d 111, 115 (Alaska 1963) (citing the importance of timely objections to the fair and efficient administration of justice).

**8.** At the hearing, Allan relied on his affidavits. In response, Carrie called IBEW Plan Administrator Gregory Stokes to testify that the girls' insurance plan was an employer-funded benefit. Before the parties proceeded to argue Allan's motion, the following exchange occurred:

> *Court:* Are the parties presenting any additional evidence?

> *Ms. Holland [Allan's Attorney]:* We have no further testimony unless the court would like to inquire of Mr. Parks who we submitted an affidavit from. He will be available by telephone. But I believe that all the—
> *Court:* That—Mr. Parks' affidavit doesn't appear to disagree with Mr. Stokes' testimony.
> *Ms. Holland:* That's correct your honor.
> *Court:* Then what are the [closing] arguments?

**9.** Alaska R. Civ. P. 90.3 Commentary VII.A.

**10.** Allan actually seeks credit for one half of a more conservative figure—$339.20—the difference between the two amounts apparently reflecting computational error.

the increased cost of covering their two daughters. She presented his testimony only to make the point that Allan did not actually pay for this coverage—that his employer paid it. This was the heart of Carrie's opposition to Allan's motion below, and it is the core of her argument on appeal. Alaska Civil Rule 90.3(d)(1) permits a non-custodial parent to receive child support credit for providing court-ordered health insurance only if the insurance is "actually paid" by that parent.[11] According to Carrie, the cost of coverage is not "actually paid" by Allan, since his employer pays for the insurance. In Carrie's view, Allan would be entitled to receive credit only if he personally paid the costs or if they were reflected as deductions from his take-home pay.

Allan responds that he does "actually pa[y]" for the insurance because he forgoes the benefit of future income in order to maintain the insurance. He contends that "[m]oney put into his retirement is just as valuable as money put into his pocket every month.... Since retirement money is income to him, the loss of it due to a health insurance election for the children represents a very real cost to [him]."

Allan has the better argument. Civil Rule 90.3(d)(1) allows Allan a credit for costs that he "actually paid," but it does not expressly require that Allan pay those costs directly or out of his present take-home income. The Commentary to the rule provides some insight into the purpose of the "actually paid" requirement. It suggests that the rule mandates allocation of insurance payments only when there is "actual cost" imposed on the parent seeking a credit.[12] By opting for employer-funded insurance coverage over payments into a retirement plan, a non-custodial parent incurs a cost as real as the cost of paying directly. In keeping with the Commentary, we interpret Rule 90.3's "actually paid" requirement to include this situation.

The record establishes that Allan paid an actual cost out of his future income stream in order to maintain his children's insurance. The record also establishes that this cost is approximately the amount that Allan asserted as the basis for requesting a child support credit.[13] Accordingly, we conclude that the superior court erred in finding that Allan failed to produce admissible evidence sufficient to support his claim for a child support credit.

We nevertheless note that Allan's evidence on this point may not be conclusive. Although neither party addresses the issue, the record suggests that Allan has remarried and that his new spouse has a child. It therefore seems conceivable that Allan's added cost for insuring his family provides coverage not only for Kristen and Kaylee, but also for his new spouse and her daughter.[14]

On remand, the court should resolve any remaining uncertainty on this point. Because Rule 90.3(d)(1) entitles Allan to a credit based only on his added costs for insuring Kristen and Kaylee, he should receive no credit for any added costs reflecting coverage of his new family members. The court may require Allan to produce additional evidence concerning his coverage. If the plan covers other family members, and evidence is unavailable on the incremental cost of insuring only Kristen and Kaylee, the court should

---

11. See Alaska R. Civ. P. 90.3(d)(1); see also Alaska R. Civ. P. 90.3 Commentary VII.A. (50/50 split appropriate absent finding of "good cause").

12. See Alaska R. Civ. P. 90.3 Commentary VII (1994–95) ("Only actual cost to the obligor ... may be credited."). The amended version of the Commentary is silent with respect to the interpretation of "actually paid," but the rule itself has not materially changed on this point. See Alaska R. Civ. P. 90.3 Commentary VII (1998–99).

13. See supra note 10 and accompanying text (discussing the amount of Allan's requested credit).

14. The court did not deny Allan's motion on this basis, and while the current record is not conclusive on the point, it points more strongly to the conclusion that Allan's added cost covers just Kristen and Kaylee. Gregory Stokes, who was familiar with Allan's plan, testified that if Allan opted to forgo coverage for his daughters, "[p]art of [his] contribution would be directed towards [his] pension plan." The record indicates that, under the plan options available to Allan, family size does not affect the cost of family coverage—in other words, family coverage is an all-or-nothing option. Hence, Stokes's testimony that Allan's cost of coverage would change if he deleted his daughters implies that they are the only family members covered by his policy.

determine Allan's costs for covering Kristen and Kaylee by spreading the total added cost of family coverage pro rata among all covered family members, and allocating to Carrie half of Kristen's and Kaylee's prorated costs.

B. *The Superior Court Did Not Err in Denying Allan's Motion to Modify the Child Support Award to Allocate to Him a Dependency Tax Exemption.*

The original child support order for Kristen and Kaylee is silent as to who could claim a dependency tax exemption for them. Under federal law, the custodial parent claims the exemption unless that parent releases the claim.[15] Allan moved for an order requiring Carrie to release her claim as to Kaylee, so that he could claim Kaylee as his exemption.[16] The court refused to modify the support order, finding that Allan had cited "no authority ... to support the modification of the judgment at this late date to adjudicate issues dealing with tax exemptions."

Allan disputes this ruling, insisting that his motion was timely and that ample authority exists to establish the court's power to order release of Carrie's exemption. We need address only the timeliness issue.

■ In *Dewey v. Dewey*,[17] we stated that a parent may seek modification of a child support order either by demonstrating a "material change in circumstances" under Civil Rule 90.3(h)(1) or by moving for relief under Civil Rule 60(b).[18] Allan claims that the trial court mistakenly considered his motion only under Rule 60(b), which imposes time constraints on parties moving for relief from a judgment. He faults the court for failing to consider his motion under Rule 90.3(h)(1), which imposes no comparable restrictions. Allan asserts that in the setting of child custody disputes, the right to claim a dependency tax exemption is a "custody or custodial concept" rather than a "property division" issue.[19] Therefore, Allan implies, a party can raise the issue by a motion to modify support under Rule 90.3(h)(1).

■ Allan's assertion is correct to a point. In *Waggoner v. Foster*,[20] we treated the allocation of dependency exemptions as a matter of child support subject to modification under the rule.[21] But before the trial court may modify a support order under Rule 90.3(h)(1), the moving party must allege and prove a material change in circumstances.[22] Absent changed circumstances, the sound principle of finality requires the order to be treated as final.[23]

■ We have previously recognized that both factual and legal changes may amount to material changes in circumstances for purposes of modification.[24] Allan alleges no factual change in circumstances. He argued before the trial court that the recent amendment of Rule 90.3(d)(1)'s provisions dealing with insurance coverage was a material change in circumstances. But a change in child support guidelines allows the court to grant a motion for modification based on changed circumstances only to the extent that specific change in the rule is relevant to the change proposed in the motion.[25]

Here, the recent change in Rule 90.3(d) speaks to health care issues and is undeni-

15. *See* 26 U.S.C.A. § 152(e) (West Supp.1998).

16. Alaska has not yet determined whether a court may force a custodial parent to release the claim.

17. 886 P.2d 623 (Alaska 1995).

18. *See* Alaska R. Civ. P. 90.3(h)(1); *Dewey*, 886 P.2d at 626, 630 n. 14.

19. *See Allen v. Allen*, 645 P.2d 774, 776 (Alaska 1982) ("The provisions of a decree adjudicating property rights, unlike provisions for child support, child custody or alimony, constitute a final judgment not subject to modification.").

20. 904 P.2d 1234 (Alaska 1995).

21. *See id.* at 1235.

22. *See* Alaska R. Civ. P. 90.3(h)(1); *see also Dewey v. Dewey*, 886 P.2d at 629–30 (noting that the moving party must show a material and substantial change in circumstances by a preponderance of the evidence).

23. *See Bunn v. House*, 934 P.2d 753, 757 (Alaska 1997).

24. *See id.* at 758.

25. *See id.*

ably relevant for purposes of altering the original order's provisions relating to Allan's right to a credit for providing his daughters with health insurance. But this change is irrelevant to the issue of tax exemptions. Hence, the change in the rule cannot be deemed "material" for purposes of Allan's motion seeking modification to allow him a tax exemption.

Because Allan alleges no other change in law or facts relating to the tax exemption allocation, and because he has failed to allege or prove grounds for relief from judgment under Civil Rule 60(b), we affirm the trial court's decision to deny his motion for an exemption.

### III. CONCLUSION

We REVERSE the denial of Allan's motion to allow credit for his daughters' health insurance payments, AFFIRM the denial of his motion to compel Carrie to execute a waiver of her claim to a tax exemption, and REMAND for further proceedings as directed in this opinion.