Matthew J.P. MILLETTE, Appellant,

v.

Carol Jean MILLETTE, Appellee.

No. S–12107.

Supreme Court of Alaska.

Jan. 4, 2008.

Rehearing Denied Feb. 20, 2008.

Matthew J.P. Millette, pro se, Anchorage.

Lance C. Wells, Law Offices of Lance C. Wells, PC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## *OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The superior court awarded sole legal and primary physical custody of a six-year-old boy to his mother. The boy's father appeals that custody award and the award of child support, which he argues was impermissibly retroactive and improperly omitted his health care contributions. Finally, the father argues that the superior court abused its discretion by not ruling on certain motions that he made before the custody hearing.

We affirm the superior court's ruling in all respects, except with regard to support. As to support, we remand to the superior court to reconsider the date at which the modified order becomes effective and the question of credit to the father for payment of his son's health care coverage.

## II. FACTS AND PROCEEDINGS

Carol Jean Millette and Matthew Millette were married for almost five years before becoming enmeshed in a protracted and contentious divorce and custody dispute. The couple met online in 1997 through the Christian Connection, an internet dating service. At that time, Carol Jean was living in Colorado and Matthew was living in Alaska, married with two young sons. In October 1997 Carol Jean and Matthew met in person in Colorado while Matthew was on a business trip. In April 1998 Carol Jean moved to Alaska to be with Matthew and lived in an apartment across from his. Matthew divorced his first wife in August 1998 and married Carol Jean a month later. Shortly thereafter Carol Jean and Matthew moved into a home together in Eagle River with Matthew's two sons and Carol Jean's teenage son. The relationship became rocky after they moved in together and Carol Jean experienced her first Alaska winter. Carol Jean found conditions in Alaska to be very depressing.

Jesse was born July 21, 2000. As Jesse grew out of his infancy and became a toddler Carol Jean began to notice that there was "something seriously wrong" with him—his play grew more solitary and his language development stopped. In December 2002, when Jesse was almost two and a half years old, he was formally diagnosed with autism. Jesse has since been seen by many doctors and specialists including Dr. Brennan, who diagnosed the autism, Dr. Lillibridge, who tested Jesse for allergies, Dr. Grove, a naturopathic doctor who works with "Defeat Autism Now" and who advises Carol Jean on Jesse's diet, and Katherine Seyb, a speech pathologist.

In June 2003 Carol Jean and Matthew separated. Both Matthew and Carol Jean have since reported misconduct by the other parent to the police and the Office of Children's Services (OCS).

Through a domestic violence protective order Matthew obtained custody of Jesse for the first several months following the parties' separation. In February 2004, following the expiration of that order, Carol Jean and Matthew agreed to share custody on a week-on/week-off basis. In July 2004 the court-ordered child custody investigation report recommended that Carol Jean have sole legal and primary physical custody. Shortly after the release of that report, Carol Jean decided she would like to move to Arizona with Jesse. She filed two motions to modify the interim custody arrangement. In August 2004 the superior court modified interim custody, giving Carol Jean sole legal and physical custody of Jesse. Matthew was ordered to enroll in and complete a court-approved anger management program as well as a minimum of twelve hours of parenting classes. Under the modified interim custody order, Matthew was entitled to visitation with Jesse two out of every three weekends (from six p.m. Friday until seven p.m. Saturday) as well as one weeknight visit and alternate holidays.

Superior Court Judge Morgan Christen entered the divorce decree on October 29, 2004. All issues involving custody, visitation, and support were reserved for a separate trial, which occurred over four days in September 2005. The superior court entered its findings of fact and conclusions of law on October 5, 2005.

Judge Christen awarded Carol Jean sole legal and primary physical custody of Jesse. While Carol Jean remained in Alaska, Matthew was entitled to continued visitation on the schedule outlined in the August 2004 order on the condition that within thirty days he file proof that he had enrolled in anger management counseling. The counseling was to be completed prior to any out-of-state visitation should Carol Jean move to Arizona as planned. Furthermore, if Carol Jean moved, Matthew was entitled to reasonable visitation whenever he was in the area where Jesse lived and was also entitled to two weeks of visitation in Alaska each summer and one week of visitation over the winter

holidays, also dependent on his completion of anger management counseling.

Judge Christen ordered child support in the amount of $348 retroactive to August 9, 2004, the date on which Carol Jean received interim custody of Jesse.[1] This amount did not reflect credit for any of Matthew's health care payments for Jesse.

Matthew appeals the court's custody and visitation decisions. He also appeals the child support award as impermissibly retroactive and impermissibly exclusive of his health care payments. Finally, he appeals the court's failure to rule on two pre-trial motions.

## III. STANDARD OF REVIEW

■■■ The trial court has broad discretion in the determination of child custody issues.[2] As we have noted in the past, "[w]e give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[3] We will reverse a trial court's resolution of custody issues "only if, after a review of the entire record, we are convinced that the trial court abused its discretion or that the controlling factual findings made by the trial court are clearly erroneous."[4] In a child custody case, abuse of discretion is established "if the trial court considered improper factors, or improperly weighted certain factors in making its determination."[5] A court's factual findings are clearly erroneous when our review of the entire record leaves us "with a definite and firm conviction that a mistake has been made."[6]

■■■ Additionally, "[a] court's modification of a child support award is reviewed for an abuse of discretion and will not be set aside unless a review of the record as a whole leaves the appellate court with a definite and firm conviction that a mistake has been made."[7] Cases involving the "proper method of calculating child support," on the other hand, present a question of law which we review *de novo*.[8] Whether the court had the authority to retroactively award child support is also a question of law to be reviewed *de novo*.[9] When reviewing questions of law, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[10]

■■■ We review decisions on motions to reopen discovery for an abuse of discretion.[11]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion in Awarding Sole Legal and Primary Physical Custody to Carol Jean.

■■■ Alaska Statute 25.24.150(c) governs child custody decisions and requires that the court "determine custody in accordance with the best interests of the child...." The statute lists nine factors which the court shall consider in determining the best interests of the child. These factors are:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

1. Child Support Services Division (CSSD) had previously issued a child support order for ninety dollars a month.

2. *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000).

3. *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

4. *Jenkins*, 10 P.3d at 589.

5. *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982).

6. *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993).

7. *Boone v. Boone*, 960 P.2d 579, 582 n. 2 (Alaska 1998).

8. *Spott v. Spott*, 17 P.3d 52, 55 (Alaska 2001).

9. *Taylor v. McGlothlin*, 919 P.2d 1349, 1351 n. 3 (Alaska 1996).

10. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

11. *Taylor v. Johnston*, 985 P.2d 460, 463 (Alaska 1999).

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child; [12]

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.[13]

In a well-reasoned decision, Judge Christen explicitly discussed the first seven factors and found that factors two, five, six, and seven all favored Carol Jean and that factors three and four were neutral. Matthew does not appeal the lack of consideration of factor eight, presumably because he never alleged that Carol Jean had any substance abuse problems. Moreover, our case law does not require that the court explicitly discuss every factor.[14] Similarly, Matthew does not argue that the superior court impermissibly put too

much weight on one factor—indeed, under the court's analysis none of the factors favored Matthew. Instead, Matthew's argument is based largely upon his disagreement with the court's factual conclusions. Matthew also argues that "[t]he mother's testimony was given greater credence than was the father's."

We reject Matthew's arguments. As discussed in the standard of review, it is not this court's role to second guess the trial court on issues of credibility.[15] Because Matthew has failed to offer any legal argument that the superior court abused its discretion, and because (as discussed in detail below) the court's factual findings were not clearly erroneous, we affirm the superior court on the issue of custody.

## 1. The capability and desire of each parent to meet Jesse's special emotional, mental, and social needs

The superior court stated that the capability and desire of each parent to meet Jesse's special emotional and mental needs favors Carol Jean for several reasons. Matthew argues that Carol Jean is not best equipped to handle Jesse's autism. He argues that the superior court failed to consider the evidence presented regarding Dr. Brennan's recommendations on how to treat Jesse's autism. Matthew may be alluding to the fact that Jesse did not attend summer school while in Carol Jean's care even though Dr. Brennan allegedly recommended summer school. A review of the record reveals that Dr. Brennan also recommended speech therapy, which Carol Jean arranged for Jesse, and that Carol Jean had to choose between speech therapy and summer school due to scheduling conflicts. Thus, Matthew fails to demonstrate that Carol Jean mismanaged

---

**12.** Factor six was amended to the quoted form as of July 1, 2004. AS 25.24.150(c), *as amended by* ch. III § 4–5, SLA 2004. This date was before the superior court judge issued her decision but after the case was assigned to the court for consideration. The previous version of factor six read: "The desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent."

**13.** AS 25.24.150(c).

**14.** *Ebertz v. Ebertz*, 113 P.3d 643, 648 (Alaska 2005) ("[T]he court need not discuss each statutory factor in detail; the court's findings will be sufficient if they give us a clear indication of the factors which [the court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved.") (quotations omitted).

**15.** *Id.* at 651.

Jesse's needs or failed to incorporate the doctor's advice.

Matthew also argues that he should not be penalized for taking a less active role in Jesse's care during Jesse's younger years because he worked to support the family while Carol Jean stayed at home to care for the children. However, the testimony at trial indicates that Matthew was in fact resistant to allowing support services for Jesse at that time. Carol Jean testified that Matthew was initially against allowing individuals from Mat–Su Infant Services into the house because he was afraid they would "invoke their values on [the family]" in a way that was inconsistent with the Christian values of their household. Carol Jean also testified that it took several months of pleading before she was able to strike a deal with Matthew to allow in-home services on the condition that if they said anything that Carol Jean felt was derogatory or threatening they would have to leave.

Matthew contends that he took responsibility for Jesse's care while he had interim custody. Matthew states that during this time he was a "stay at home dad" and took Jesse to numerous doctors' appointments and enrolled him in a preschool program that provided occupational and speech therapy. Matthew argues that Carol Jean merely continued existing therapies and schooling when she gained interim custody. Testimony at trial, however, revealed that Carol Jean was an active participant in Jesse's speech therapy, which began after she gained interim custody. Katherine Seyb, the speech pathologist, testified that Carol Jean "ha[d] done a great deal to work with him at home," while Matthew never made contact with Seyb. Moreover, the evidence regarding who took care of Jesse's needs when the couple had 50/50 custody was contested at trial and thus required a credibility determination that was within the discretion of the superior court.

Matthew and Carol Jean strongly disagree about Jesse's dietary needs. Carol Jean spent hours researching the effect of diet in autistic children and developed strict food lists with a naturopathic doctor designed to minimize Jesse's manifestations of autism and to reduce rashes. Matthew contends that this was unnecessary because medical testing revealed that Jesse was allergic only to wheat, and that Jesse's rashes were not caused by food consumption. Carol Jean frequently accused Matthew of not following the strict dietary regime during his visitation with Jesse, and Matthew counters that Carol Jean's own "safe list" of foods in fact included items with wheat in them.

The court found that Jesse required a special diet and that "it has been Ms. Millette who has consistently adhered to the demands of meeting Jesse's special dietary needs." While the merits of Jesse's strict diet might well be scientifically debatable, it was not clearly erroneous for the court to find the diet justified, and to find that Carol Jean more clearly adhered to it.

## 2. Stability

The superior court concluded that Jesse would have a temporary disruption in his environment regardless of its custody determination. With Carol Jean, Jesse would experience the disruption of a planned move to Arizona. With Matthew, Jesse would experience the disruption of changing his primary caregiver. The superior court weighted this factor strongly in Carol Jean's favor by looking at the ability of the parents to provide long-term stability. The court found that adherence to therapy schedules was key to that stability and that evidence at trial showed that Carol Jean was the parent who secured these therapies, who followed up with the care providers, and who adhered to Jesse's strict diet.

Matthew argues that the court improperly equated moving to Arizona and away from friends, family, doctors, and schools with moving into his father's home. It was not clearly erroneous for the court to find that a change in primary caregiver would be as disruptive as a change in the other aspects of Jesse's life. Moreover, Matthew does not challenge the court's analysis on the long-term stability, which was clearly more important to its determination of this point.

## 3. Willingness to foster relationship with other parent

The superior court found that this factor favored Carol Jean after finding that her

planned move to Arizona was not motivated by a desire to prevent Matthew from having a relationship with Jesse, and finding that if Matthew had custody he might use domestic violence allegations to keep Jesse from Carol Jean.

Matthew argues that the court failed to consider evidence that Carol Jean disrupted his relationship with Jesse. He enumerates a variety of actions that he alleges Carol Jean has undertaken which have impeded his relationship with Jesse, including failing to respond to visitation requests, agreeing to visitation requests at the last minute, seeking modifications to the custody arrangement, limiting Matthew's visitation time, and hunting for signs of neglect following visitation.

While a review of the evidence provides some support for Matthew's assertions,[16] the court's findings favoring Carol Jean are also supported by the record. Despite Matthew's allegations regarding Carol Jean's attempts to disrupt his relationship with Jesse, Carol Jean testified that she had happily fostered a continued relationship between her oldest son and his father despite moving from Colorado to Alaska, indicating that she was capable of fostering a continued relationship between Matthew and Jesse as well. Evidence also established that Matthew made allegations against Carol Jean to the police four times between June 2003 and September 2005, twice resulting in Carol Jean's arrest on charges that were ultimately dropped.

Though the record may have presented some evidence disfavoring both parties, the court's decision that this factor favored Carol Jean was not clearly erroneous. Because the justification of each party's actions in limiting contact with the other required credibility determinations, and because the parties' testimony was important to the court's determinations on this issue, we defer to the superior court, which was in the best position to evaluate this evidence.[17]

### 4. Domestic violence

The court noted that the parties accused each other of domestic violence but found that the evidence at trial did not support the continuation of a domestic violence order between the parties. Overall, the court found that this factor favored Carol Jean because Matthew had an untreated anger problem and subjected his other children to harsh and physically abusive discipline in the presence of other family members. Matthew argues that the court discounted his evidence of being the victim of spousal abuse because he is male. Our review of the record, however, supports the trial court's finding.

Carol Jean was arrested on Matthew's domestic violence complaint on the day they separated in June 2003. The incident apparently escalated into a domestic violence situation when Matthew attempted to take Jesse from Carol Jean and she tried to grab Jesse back, allegedly hitting Matthew in the process. Carol Jean was left with bruises from this altercation, while Matthew was not. Matthew told his older sons from his previous marriage to get in the car and to call the police. Carol Jean allegedly cut off the police call and was charged with interfering with a domestic violence report as well. Matthew's oldest children reported to the police and, subsequently to OCS, that Carol Jean frequently spanked them for minor infractions. Although the criminal charges were dropped, Matthew was awarded temporary custody of Jesse through a domestic violence protective order. Additionally, OCS created a temporary agreement with Matthew in July 2003 which stipulated that Jesse would have only supervised visits with Carol Jean until she had obtained parenting classes and been determined to be emotionally and mentally stable. By August 2003 OCS found that though the allegations of mental injury against Matthew's two oldest children and Jesse were substantiated, Carol Jean had complied with the recommendations and no longer needed her visits to be supervised.

---

**16.** Notes exchanged between Carol Jean and Matthew reveal a tone of distrust and disapproval on the part of Carol Jean, including frequent accusations of neglect. Carol Jean's requests for reduced custody and shortened visitation times also reveal her distrust of Matthew to care for Jesse during prolonged visitation.

**17.** See *Ebertz,* 113 P.3d at 650.

Matthew's own testimony about Carol Jean's alleged history of domestic violence does not reflect that he ever experienced fear of harm from her. He described Carol Jean's seasonal affective disorder and stated that in their first year of marriage, when Carol Jean was feeling isolated and depressed, she threatened him with a gun so that he would let her leave. On cross-examination, when asked if he felt in danger, Matthew responded "I felt in danger for her." Another time he was worried that Carol Jean would commit suicide. Matthew indicated that Carol Jean did not inflict any serious physical injury upon him during their relationship.

Matthew, in turn, was the subject of child abuse allegations. In August 2003 Alaska State Troopers and OCS responded to a report that Matthew's older sons (ages nine and eleven) were home alone supervising Jesse (age three). The troopers investigated and found the older boys had been well trained in safety and had a neighbor to call on in case of an emergency. Additionally, Matthew was gone only for an hour on a job interview. OCS closed the investigation as "invalid for neglect."

At trial the court heard testimony that Matthew has the parenting style of a firm disciplinarian, which on occasion included severe physical correction of his children. Carol Jean testified that Matthew made a paddle about an inch and a half thick that he beat the children with. He broke the paddle on her oldest son, and then proceeded to hit him with a two-by-four. Carol Jean also testified that Matthew beat one of his older sons so hard that she and Jesse cried. Nancy Walters, a friend of Carol Jean's and member of their church, corroborated Carol Jean's account of Matthew's harsh disciplinary style by recounting how he interacted with his boys, including an incident where he slapped Jesse's leg for being "squirmy" during church. Matthew's response to these allegations was to testify that he was never reported for domestic violence or child abuse until the commencement of the divorce hearing. But at no point did Matthew dispute Carol Jean's accounts.

Carol Jean also presented evidence that Matthew was fired from his job at Xerox based on an allegation that he brought a concealed handgun to work, and that he had threatened a co-worker with the gun.

Taken as a whole, the record provides ample factual support for the superior court's findings that Matthew (1) was not a victim of domestic violence, (2) had an anger problem, and (3) was not as suitable a parent for Jesse as was Carol Jean.

## B. The Superior Court's Visitation Order Was Not an Abuse of Discretion.

Matthew appeals the superior court's award of very limited visitation as well as the preconditions that the superior court imposed on that visitation: attending anger management counseling and obtaining a letter from a counselor familiar with the court's decision stating that there are no continued barriers to Matthew having unsupervised overnight visitation for more than a weekend at a time.

The superior court also noted: "Mr. Millette is free to file a motion for additional visitation in the future, when the court will presumably have access to additional information from Jesse's care providers and teachers and be able to better assess Jesse's progress and his ability to tolerate lengthier stays in Alaska and lengthier interruptions of his therapies."

Matthew argues that these conditions were imposed solely on Carol Jean's word. However, our review of the record reveals corroboration of Carol Jean's testimony from within the ample record, from Matthew's own failure to deny his disciplinary style, and from the testimony of other witnesses. Under these circumstances and with the acknowledgment that future court orders may allow for more liberal visitation, the court did not abuse its discretion in deciding that limited visitation was in the best interest of Jesse given his special need for stability and routine.

## C. Child Support

### 1. The award of child support was improperly retroactive.

Matthew argues that the superior court violated Alaska Civil Rule 90.3(h)(2) by

making the modification of child support retroactive. Civil Rule 90.3(h)(2) states in relevant part:

No Retroactive Modification. Child support arrearage may not be modified retroactively.... A modification which is effective on or after the date that a motion for modification, or notice of petition for modification by the Child Support Services Division, is served on the opposing party is not considered a retroactive modification.

We have held that "[w]ithout a valid motion before the court, a modification of child support would be retroactive and thus prohibited."[18] This is true even where the circumstances have materially changed and a modification would likely be permitted upon motion.[19] In such cases, the burden remains on the non-custodial parent to file a motion for modification of child support.[20]

Here the superior court entered a starting date of August 9, 2004 on the child support order that was issued on October 4, 2005. August 9, 2004 was the date on which the court granted Carol Jean interim legal and physical custody of Jesse. On November 24, 2004, more than three months after that order, Carol Jean filed a motion for modification of a child support order previously issued by the CSSD in the amount of ninety dollars per month. When the court ruled upon this motion for modification in its October 2005 final child support order, it used the date of the order of interim custody as the starting date for the modified child support.

Carol Jean argues that the court appropriately chose the August 9 date because it was the date of the order for modification of interim custody. Carol Jean also argues that the court could have chosen the earlier date

at which Carol Jean petitioned for modification of interim custody. However, Carol Jean's motion for a modification of custody did not include a request for a modification of child support. Thus, we are confronted with a court-ordered change in custody that did not mention child support and which did not follow a motion requesting a change in child support.

Carol Jean relies on Boone v. Boone[21] for the proposition that the court may use a date other than the date of notice of a petition to modify child support. However, Boone contemplates dates following notice to the obligor, rather than dates preceding it.[22] Moreover, nothing in Boone alters the presumption in our case law that "a revised child support order presumptively relates back to notice of a petition for modification."[23]

Therefore, we hold that the earliest date for the modification should be the date on which Matthew received notice of the November 24, 2004 "Motion for Modification of Child Support and Withholding Order." We remand for a determination of that date.

### 2. It was error to fail to deduct the amount Matthew pays for health insurance for Jesse.

Matthew alleges that the superior court erred because its child support order did not reflect any credit for Matthew's monthly payment for Jesse's health insurance. Civil Rule 90.3(d)(1) entitles Matthew to a credit based on the added costs that he pays in order to insure Jesse.[24] Carol Jean argues in her brief that the court did not abuse its discretion on this issue because

---

18. Wright v. Wright, 22 P.3d 875, 879 (Alaska 2001).

19. See id.

20. Karpuleon v. Karpuleon, 881 P.2d 318, 320 (Alaska 1994).

21. 960 P.2d 579 (Alaska 1998).

22. Id. at 585 ("The rule's text does not express a preference or presumption that a modification become effective on the motion service date, and does not prevent the superior court from exercis-

ing its discretion and selecting a later effective date. But we are nonetheless persuaded that the motion service date should be the preferred effective date ....") (emphasis added).

23. State v. Dillon, 977 P.2d 118, 118 (Alaska 1999).

24. Civil Rule 90.3(d)(1) states in relevant part: "An obligor's child support obligation will be decreased by the amount of the obligee's portion of health insurance payments ordered by the court and actually paid by the obligor.... The cost of insurance is the cost attributable to the children for whom support is paid."

Matthew failed to tell the court exactly how much he was paying and failed to produce any documentation of payment. Matthew argues that the testimony established that he was providing support and that he should have been told by the court to supply more information if that was needed. We agree with Matthew.

In *Rusenstrom v. Rusenstrom* [25] we reversed the superior court's determination that insufficient evidence had been provided regarding a father's payments for his dependents' health care and remanded for further findings on the amount of the credit. In that case it was unclear how much of the health insurance benefits paid by the father went to the children at issue rather than other dependents and that issue had not been addressed below.[26] We remanded with instructions to resolve uncertainty on this point.[27]

In this case, the transcripts reveal that the issue of health insurance was discussed, though without firm details. Carol Jean's attorney, Lance Wells, asked Matthew about the amount he paid for health insurance. Judge Christen also questioned Matthew, asking how much additional money he paid to insure Jesse rather than just himself. Matthew responded to this questioning with some equivocation: "it's somewhere in the vicinity of a hundred dollars." Wells [28] prompted, "You'd be able to get that information from the employer, the insurance provider, exactly how much Jesse's portion of the policy is, and make that available...." Matthew replied, "I will try. They couldn't give me an exact number, they said 'you're just going to have to do the math.' They could not issue me a statement saying 'this is how much you pay for this one individual.' " It appears Matthew never supplied the information to the superior court, although he alleges specific dollar amounts in his brief on appeal.

Because Matthew presented evidence that he was making some payment towards Jesse's health care, the court should have notified Matthew, as a pro se litigant, that he needed to provide more information before the court was able to apply a specific credit in a child support award.[29] Because our review of the transcript does not reveal any such request for documentation from the court following Matthew's testimony, we remand for factual findings with instructions that the superior court should credit the past health care support Matthew paid in accordance with Rule 90.3(d)(1).

### D. Matthew Waived the Issue that the Superior Court Erred in Failing To Rule on Matthew's Motion To Compel Discovery.

 Matthew asserts that the superior court abused its discretion by failing to rule on his motion to compel discovery. Carol Jean counters that Matthew waived this issue for purposes of appeal because he did not do enough to insist upon a ruling at trial. Carol Jean also argues that she legitimately objected to the discovery request on the grounds that it was untimely.

 It is well established that issues are waived for purposes of appeal if not adequately raised below.[30] In *Marino v. State* [31]

---

25. 981 P.2d 558 (Alaska 1999).

26. *Id.* at 562.

27. *Id.*

28. It appears from the transcripts that Wells asked this question. However, Carol Jean alleges in her brief that the court asked this question.

29. *See Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987) ("[T]he trial judge should inform a *pro se* litigant of the proper procedure for the action he or she is obviously trying to accomplish....").

30. *Mahan v. State,* 51 P.3d 962, 966 (Alaska App.2002) ("We have consistently held that a defendant who chooses to proceed without de-

manding a ruling from the trial court waives the potential claim of error."); *see also Taylor v. Johnston,* 985 P.2d 460, 466 (Alaska 1999) (declining to reverse where motion to reopen discovery was not ruled upon and party did not alert court to the status of the motion); 4 C.J.S. *Appeal and Error* § 313 (2005) ("An appellate court does not ordinarily pass on questions raised but not ruled on in the court below; but a ruling by implication may be sufficient to present a question for review.").

31. 934 P.2d 1321 (Alaska App.1997).

the court of appeals held that a defendant could not raise the failure to receive a ruling on a discovery motion on appeal where he chose to proceed at trial without seeking a ruling.[32] In that case the defendant asked once for a ruling on a motion to compel discovery of certain documents.[33] The judge announced that he would review the documents in question and issue a ruling later.[34] However, the ruling never came and the defendant never raised the issue again.[35] Similarly, in *Erickson v. State*[36] the court of appeals held that it was the defendant's "duty to insist that the trial court rule on his motion."[37]

Here, Matthew made some effort to secure a ruling on his motion to compel discovery with his August 5, 2005 "Request for Ruling." However, Matthew participated in the custody hearing without suggesting until the last day that his lack of discovery required a postponement. Not until the fourth day of the hearing did Matthew bring up the issue of discovery, and he did so then only in passing.[38] By proceeding through almost the entire child custody hearing without mention of his motion to compel, Matthew did not sufficiently bring the issue to the superior court's attention.

 Matthew argues that he deserves extra leniency under *Breck v. Ulmer*[39] because of his pro se status in the litigation. However, we declined to extend additional consideration to a pro se litigant on the issue of a court's failure to rule on a motion in *Jourdan v. Nationsbanc Mortgage Corp.*,[40] where the litigant offered no proof that the court's failure to rule was related to the litigant's pro se status and the court clearly made attempts to accommodate the litigant in other ways.[41] Here, Matthew offers no indication that the court's failure to rule was related to Matthew's status as a pro se litigant. Accordingly, he was entitled to no extra consideration.

### E. The Superior Court Did Not Err in Failing To Rule Regarding Disbursement of Funds From the Sale of the Marital House.

 Matthew alleges that the court erred by failing to rule on Matthew's motion to compel disbursement of proceeds from the sale of the marital home. Carol Jean disputes Matthew's right to the money and believes Matthew owes her money. The superior court did not address the issue because it was not relevant to the issue of custody, and because Matthew himself objected during the hearing to the discussion of debts he owed Carol.

We hold that the court did not err in failing to address the issue of outstanding debts during the hearing on custody, visitation, and support. Of course, because the hearing and the court's subsequent findings of fact and conclusions of law did not encompass the issue of marital assets, nothing in the court's decision below or in our decision today precludes Matthew from filing a new motion in the superior court to compel the disbursement of funds he may be owed.

## V. CONCLUSION

We AFFIRM the superior court's decisions on custody and visitation and REMAND on the issue of child support for

**32.** *Id.* at 1327.

**33.** *Id.*

**34.** *Id.*

**35.** *Id.; cf. Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 796 (Alaska 2002) (where party made three timely discovery requests, requested that board compel discovery three times, and addressed discovery issue at pre-trial conference, in motion for reconsideration and in additional objection, this court remanded for factual determination of whether failure to rule on discovery motions violated due process).

**36.** 824 P.2d 725 (Alaska App.1991).

**37.** *Id.* at 733.

**38.** On the issue of Carol Jean's mental health, Matthew stated: "This is the only documentation I have due to the fact that I received no discovery from Carol Jean."

**39.** 745 P.2d 66, 75 (Alaska 1987).

**40.** 42 P.3d 1072 (Alaska 2002).

**41.** *Id.* at 1078–79.

further proceedings consistent with this opinion.