NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARJORIE J. LIVENGOOD, | ) | |
| | ) | Supreme Court No. S-14188 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-10-01552 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER R. LIVENGOOD, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No.1441 – October 31, 2012 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa H. White, Judge.

Appearances: Marjorie J. Livengood, pro se, Wasilla, Appellant. Steven Pradell, Steven Pradell & Associates, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices.

1.     This appeal concerns the custody of Marjorie and Christopher Livengood's two minor children following the couple's divorce. Marjorie appealed the superior court's order awarding primary physical and sole legal custody to Christopher. On March 28, 2012, we issued a Memorandum Opinion and Judgment remanding this

---

\*      Entered under Appellate Rule 214.

case to the superior court for clarification of that court's findings and conclusions.[1] Of primary concern to us was that the superior court may have relied on the mother's involvement in a non-marital relationship and related lifestyle choices in making its custody decision in violation of *Craig v. McBride*.[2] We retained jurisdiction and now resolve the remaining issue.[3]

2.      After our remand, the superior court issued supplemental findings and conclusions, explaining:

> In reaching its custody decision in this matter, this court did not rely on Marjorie's lifestyle choices and any comments by this court that suggested such reliance were not intended to convey that impression. Rather, this court intended to find that, while both Christopher and Marjorie were good and loving parents, Marjorie's request that the court grant her primary custody when she planned to leave her job and relocate to Minnesota [sic: Michigan] would result in more geographic and economic instability for the two young girls.

The court emphasized that "[i]t was Marjorie's *financial* decision that was troubling to this court, not her *personal* decision to live with her significant other . . . rather than marrying him." (Emphasis in original.)  Ultimately, the superior court concluded that "Christopher's plan provided more stability than did Marjorie's," and the court awarded primary custody to Christopher.

3.      The superior court relied in large part on the testimony of Christopher's mother, who testified that it was her intention to remain a source of support to both Christopher and the two children.  "The court found [the grandmother] to be

---

[1]     *Livengood v. Livengood*, Mem. Op. & J. No. 1413, 2012 WL 1058866 (Alaska, Mar. 28, 2012).

[2]     639 P.2d 303, 305-06 (Alaska 1982).

[3]     *Livengood*, 2012 WL 1058866, at *2.

highly credible and believed that she was prepared to make a strong commitment to the girls for whatever period of time was necessary." The superior court contrasted the grandmother's testimony with the fact that "the person upon whom [Marjorie] intended to rely as the sole financial support for herself and her children did not appear at court to demonstrate his willingness to provide that support." The court also found that Marjorie "did not talk of any alternative plan or safety net that she had considered if her arrangement with [her significant other] should fail." In contrast, the court found that "Christopher had identified an employment opportunity in Oregon that he believed had more potential for growth . . . . He had garnered a commitment from his mother . . . to house him and the girls, and to assist with the care of the children when he was working. He had a plan." "At trial, Christopher satisfied the court that his plan was working."

4. Trial courts enjoy broad discretion in making child custody determinations.[4] "We will reverse a trial court's resolution of custody issues only if this court is convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[5] Abuse of discretion in a child custody case is established if the trial court considers improper factors or improperly weighs certain factors in reaching its decision.[6] Factual findings are clearly erroneous when a review of the entire record leaves this court with a "definite and firm conviction that a mistake

---

[4] *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996) (citing *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982)).

[5] *R.M. v. S.G.*, 13 P.3d 747, 750 (Alaska 2000) (quoting *Gratrix,* 652 P.2d at 79-80) (internal quotation marks omitted).

[6] *Jaymot v. Skillings-Donat*, 216 P.3d 534, 538-39 (Alaska 2009) (citing *Millette v. Millette,* 177 P.3d 258, 261 (Alaska 2008)).

has been made."[7] We give "particular deference" to a trial court's findings when they are based primarily on oral testimony.[8]

5. In her supplemental brief to this court, Marjorie argues that the superior court placed the burden on her to prove that the children should not be placed with Christopher by using the interim custody decision as a "test" for permanent custody. She also takes issue with the superior court's misstatement of several facts, and reiterates her belief that she will be able to provided financial and geographic stability for her children. Finally, she argues that her reliance on her significant other is no different than Christopher's reliance on his mother for help in caring for the children.

6. We do not perceive any abuse of discretion in the superior court's interim custody order awarding interim physical custody of the children to Christopher. While it is understandable that the parent who did not receive interim custody may believe that the other parent obtained a litigation benefit by having interim custody and a superior opportunity to demonstrate that parent's ability to care for the children, the reality is that courts frequently must make such interim choices, especially where, as here, the parents live in different states. The superior court is charged with making its final custody decision based on an evaluation of all pertinent best interest factors, and there is no presumption that the parent who received interim custody will receive permanent custody following trial.

7. It is true that the superior court misstated certain facts. Marjorie testified that she planed to move to Michigan in part to be closer to her "large extended family," yet the superior court referenced "Marjorie's plan . . . to relocate to Minnesota where she had no friends or family other than her significant other." Though Marjorie

---

[7] *Id.* at 539 (quoting *Millette*, 177 P.3d at 261).

[8] *Id.* (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

testified that she had relatives in Michigan, she did not testify that they were available to assist her financially or provide other forms of support to Marjorie and the children; she testified only that she planned to rely on her significant other, Ken. But her significant other did not testify and Christopher's mother did. The court explained how this influenced its ability to evaluate the children's best interests:

> The court was left with different impressions of each parent's future plan. Christopher's plan included a goal of increasing his economic viability and stability, and was corroborated by the person upon whom Christopher hoped to rely for help in the short term: [his mother]. Marjorie's plan left her without employment in a location where she had no employment history or personal references; and the person upon whom she intended to rely as the sole financial support for herself and her children did not appear at court to demonstrate his willingness to provide that support.

> Marjorie's friend, Ken, had no legal duty to support her or her children. For that matter, [Christopher's mother] had no legal duty to support her adult son and grandchildren. The difference was that the court was able to hear from [Christopher's mother] and to gauge her level of sincerity and dedication to the children. The court could only rely on Marjorie's own assertions as to the commitment made by Ken.

> It was never this court's intent to pass judgment on Marjorie's personal choice not to marry and the court gave her choice as to how to manage her adult relationship no weight in its decision. However, the court did consider the possible consequences of Marjorie's overall decision to move the children to an unfamiliar place where they would have to begin again making social connections, to quit her job, to not seek new employment, but rather to rely completely upon a third party for her children's support.[] When this court found that Marjorie's newly-disclosed intent to relocate "was a major factor which [led] the court to give [Christopher] primary custody,"[] it was referring to the plan described

above, and not to Marjorie's personal decisions regarding her relationship with her friend Ken. All other factors having been found to be more-or-less in equipoise, the court concluded that Christopher's plan offered more promise for the children's future economic and, to a lesser degree geographic, stability than did Marjorie's.

8. The superior court found both Marjorie and Christopher to be excellent parents and found that they were almost entirely similarly situated, and the record supports these findings. The superior court based its decision on Christopher's presentation of more concrete and specific evidence regarding his future plans. Significantly, Christopher's mother testified at trial, and the superior court found her to be a very credible witness who was committed in concrete ways to helping Christopher provide for the children and to being a safety net for the children if necessary. On the other hand, Marjorie's testimony regarding her future plans and support network was more vague, and her significant other — upon whom she intended to rely — did not testify, nor did any of her extended family from Michigan. All other best interest factors being equal, the superior court did not abuse its discretion when it relied on the concrete testimony of Christopher and his mother over Marjorie's less specific testimony.

9. We AFFIRM the decision of the superior court.