*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ADAM SAGERS, | ) | |
| | ) | Supreme Court No. S-14843 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-08-01781 CI |
| v. | ) | |
| | ) | O P I N I O N |
| COLLEEN SACKINGER, | ) | |
| | ) | No. 6864 – February 14, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Paul R. Lyle, Judge.

Appearances: Adam Sagers, pro se, Fairbanks, Appellant. Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

Adam Sagers appeals the superior court's award of physical and legal custody of his minor son to the boy's mother, Colleen Sackinger. Adam contends that the superior court abused its discretion in denying a continuance of trial, that it clearly erred in its factual findings, and that it abused its discretion in conditioning unsupervised visitation on Adam's completion of a psychological evaluation. Adam also contends that

the trial judge was personally biased against him. Finding no error, we affirm the judgment below.

## II. FACTS AND PROCEEDINGS[1]

Adam Sagers and Colleen Sackinger are the parents of a five-year-old son. Colleen has two other children with her husband, Joseph Sackinger, from whom she is separated. Adam and Colleen began living together in 2006. Adam exhibited controlling tendencies from the start; he called Colleen derogatory names, limited her contacts with male acquaintances, and harassed her at work. In one incident he cut all the telephone and computer cords in the home after seeing a picture of a male friend on Colleen's computer. Following another argument in 2007, Colleen, fearing for her safety, tried to leave the home with her children. Adam blocked the doorway, forcing her to push him out of the way. She fled to a women's shelter.

Adam ransacked the home in her absence, destroying household items and nearly all of Colleen's personal property. He collected everything belonging to her that he considered to be sexual in nature and burned it in the front yard.

In May 2007 Colleen learned she was pregnant. Adam moved back in with her in January 2008. He took care of Colleen during the remainder of her pregnancy but refused to leave after their son was born. In May 2008 Colleen obtained a domestic violence restraining order against Adam and ejected him from her home with the assistance of the police. Adam filed this suit shortly thereafter, seeking custody of their son.

Trial was originally set for June 2009. The court continued trial until February 2010 to allow Adam to address what he claimed to be a life-threatening lung

---

[1] The history of the parties' relationship is taken from the trial court's findings of fact following the custody trial.

condition. The parties twice more continued trial by stipulation before setting the date for February 2011. The court then continued the trial three times pending the resolution of Adam's criminal domestic violence case. The court granted a last continuance, to June 2012, when Adam asserted that he needed a hernia operation.

At the pretrial conference at the end of May 2012, Adam requested another continuance on grounds that he was recovering from pneumonia. The court refused to grant the continuance without testimony from a doctor. On the day trial was to begin, Adam presented a note from a physician's assistant, who wrote that Adam suffered from a "serious medical condition" which "should preclude his court activity for at least one week." The court refused to continue the trial without medical testimony that it was necessary to do so.

The physician's assistant testified telephonically that Adam had recently had pneumonia, and that as of the preceding Friday he still had symptoms indicating that he was not yet fully recovered. The court also heard from Colleen, who testified that, according to her son, he and Adam had been bike-riding all day the day before and had then gone to "the go-carts in North Pole" until late in the evening. The physician's assistant testified that given Adam's condition it would have been inappropriate for him to engage in vigorous activity, and that if he was able to bicycle with his son he should be able to participate in court proceedings. The court then made an oral finding that Adam was exaggerating the effects of his pneumonia. The court nonetheless granted Adam a 24-hour continuance to recover — his seventh continuance.

The next day Adam appeared in court unable or unwilling to speak and communicated by passing notes to the court. The court reiterated its finding that Adam's claims of illness were not credible. After the court declined to communicate with Adam through note-passing, trial began with Adam initially refusing to speak. Before long he regained enough of a voice to restate requests that the judge recuse himself and to make

other objections that had already been overruled, and he repeatedly coughed into the microphone in what the court found to be an attempt to disrupt testimony that harmed his case. When he left the courtroom a few times to "get some air," trial proceeded in his absence, the court having warned him about the consequences and then reiterating for the record its finding that Adam was faking the extent of his illness. Less than two hours into the trial, Adam gathered his things and left the courtroom for the rest of the day; the trial continued without him.

The next morning Adam filed a motion for reconsideration of the court's ruling that he was faking his illness. The court denied the motion, reiterating its findings that Adam appeared able to speak despite his claims to the contrary, that his cough seemed to occur selectively, and that his weekend recreational activities belied his condition. Adam again left the courtroom and did not return.

As trial continued, the court heard testimony from the court-appointed custody investigator, counseling center officials who had interviewed the family members, and Colleen, all of whom testified that Adam was abusive, unstable, and controlling. The Office of Children's Services (OCS) had referred Adam and Colleen to Fairbanks Counseling and Adoption, and one of its counselors, Randy Lewis, testified as an expert in diagnosing and treating mental health conditions. He testified that he had provisionally diagnosed Adam with oppositional defiant disorder and definitively diagnosed him with narcissistic personality disorder, and that these behavioral disorders impeded Adam's parenting ability. The custody investigator, Greg Galanos, was qualified as an expert in custody investigations and mental health issues. He reviewed the counselor's notes and testified that the identified disorders would make it difficult for Adam to co-parent with Colleen and would impede his ability to recognize and attend to the needs of their son. Galanos and a program manager at Fairbanks Counseling and Adoption, Linda Huffaker, both testified about Adam's history of domestic violence.

Galanos testified that Adam should undergo a complete psychological evaluation, and he recommended that Adam should receive only short, supervised visitation until that was done. Colleen testified about the abuse described above.

Based on this testimony the superior court found that Adam had a history of domestic violence that triggered the statutory presumption against awarding him custody, citing the incidents in which he cut the computer and telephone cables in the home, blocked the doorway, and destroyed Colleen's personal property. The court granted Colleen sole legal and primary physical custody and granted Adam supervised visitation two days each week, three weeks out of every month, for four to six hours each visit. The court also ruled that Adam would be eligible for unsupervised visitation only after he had completed a psychological evaluation.

Adam appeals the court's denial of his motions for continuance, its award of custody to Colleen, its requirement that he complete a psychological evaluation before being allowed unsupervised visitation, and its denial of his motion that the judge recuse himself.

## III. STANDARD OF REVIEW

We "will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated. An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[2] The court will consider "the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion."[3]

---

[2] *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013) (internal quotation marks and footnotes omitted).

[3] *Id.* (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 183 (Alaska (continued...)

"The superior court has broad discretion in its determination of child custody. We will not set aside a lower court's child custody determination unless its factual findings are clearly erroneous or unless it abused its discretion."[4] We will set aside factual findings as clearly erroneous "only 'when our review of the entire record leaves us with a definite and firm conviction that a mistake has been made.' "[5] We will find an abuse of discretion for custody and visitation decisions "if the trial court considered improper factors, or improperly weighted certain factors in making its determination."[6]

We review de novo the question of whether a judge appears biased, which is assessed under an objective standard.[7] We review for an abuse of discretion the denial of a motion to disqualify an allegedly biased judge.[8]

---

**3**(...continued)
2009)).

**4**        *Cusack v. Cusack*, 202 P.3d 1156, 1158-59 (Alaska 2009).

**5**        *Id.* at 1159 (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)) (internal quotation marks omitted).

**6**        *Id.* (quoting *Millette*, 177 P.3d at 261).

**7**        *Griswold v. Homer City Council*, 310 P.3d 938, 941 n.6 (Alaska 2013) ("On the separate issue of whether, given the circumstances, reasonable people would question the judge's ability to be fair, the proper standard of review is de novo — because 'reasonable appearance of bias' is assessed under an objective standard.") (quoting *Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012)).

**8**        *Greenway v. Heathcott*, 294 P.3d 1056, 1062-63 (Alaska 2013) ("We review denial of a motion to disqualify a judge for abuse of discretion.").

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Denied Adam's Request To Continue The Trial Because Of Illness.

We have stated that a party's claimed illness "does not ipso facto require that a continuance be granted"; the trial court must balance the "competing goals [of] prompt resolution of litigation on [the] one hand, and a fair opportunity for all parties to present their cases on the other."[9] Under this test a party's illness requires a continuance "only to the extent that the illness prejudices the party's case by preventing him from adequately preparing for or participating in trial."[10] Thus, it was not enough in this case for Adam to show that he was sick or even that a medical professional thought it best that he not attend trial; a superior court does not abuse its discretion when it orders a sick litigant to proceed with trial if the litigant is "capable of participating in trial without serious risk to his life or well-being."[11]

Adam argued that his in-court symptoms and the testimony of the physician's assistant who had treated him showed that he was unable to participate in trial. But the witness's testimony failed to establish Adam's claim for two reasons. First, although the physician's assistant had originally recommended that it would be "better if [Adam] had a week to recover from pneumonia," he never stated that courtroom activity would pose a serious risk to Adam's health. And second, he modified his original recommendation after hearing that Adam had gone bicycling the day before,

---

[9]     *Azimi v. Johns*, 254 P.3d 1054, 1060 (Alaska 2011) (internal quotation marks and footnotes omitted).

[10]     *Id.*

[11]     *Id.*

testifying that if Adam was able to do that, he should be able to participate in the trial as well.

Furthermore, even if the medical testimony had unequivocally supported Adam's claim, it is the superior court's task to weigh the evidence, and we give particular deference to the trial court's rulings based on the demeanor of witnesses.[12] The trial judge in this case, Judge Paul R. Lyle, carefully and repeatedly described for the record his contemporaneous observations of Adam's appearance, conduct, and demeanor; this record greatly aids our appellate review of the issue. In concluding that Adam was feigning the symptoms of his illness, Judge Lyle noted that Adam's demeanor was no different than on days when he was well; that Adam appeared able to speak when he really wanted to, despite his note-passing; and that he coughed only during testimony that was damaging to his case. Judge Lyle also credited Colleen's testimony that Adam was able to speak in a normal voice outside the courtroom. We see no clear error in the judge's finding that Adam's claim of serious illness was not credible, and we therefore conclude that there was no abuse of discretion in the court's refusal to continue the trial yet again on the basis of that claim.

**B.     Adam Has Waived The Argument That The Superior Court Erred In Failing To Order Further Discovery From Colleen.**

Adam argues that his discovery rights were violated because Colleen never provided "any admission, productions, or any expert reports," specifically "any statement or diagnosis by the Fairbanks Counseling and Adoption, Randy Lewis, Linda Huffacker, or OCS regarding Mr. Sagers." Adam does not identify when he requested this information, the efforts he took to obtain it in the superior court, or how the alleged lack of disclosure affected his preparation for trial. We do not ordinarily address arguments

---

[12]     *Millette* at 177 P.3d 261 (Alaska 2008) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

that are cursorily briefed.[13]  Adam's allegation of discovery abuses is too vague for review, and we consider it waived.

C. **The Superior Court Did Not Abuse Its Discretion In Awarding Colleen Custody.**

Adam argues that the superior court abused its discretion in granting custody to Colleen because it based its decision "on false pretense with no physical or factual proof."  To the contrary, the superior court based its decision on testimony by an OCS employee, family counselors, a child custody investigator, and Colleen.  Adam's decision not to give testimony rebutting Colleen's case was his own decision, made against the strong advice of the superior court that he make an effort to support his position.  The superior court addressed each of the best interests factors in its written decision, and its findings of fact were based on the evidence and not clearly erroneous.

1. **Evidence of Adam's behavioral issues and abuse**

Adam argues that the superior court clearly erred in finding that he had behavioral disorders and a violent past.  Specifically, he attacks the superior court's reliance on the testimony of Galanos, the custody investigator, arguing that Galanos lacked "[c]oncrete evidence to support what he said was true."

But the court did not clearly err in finding otherwise.  Galanos met several times during his investigation with Adam, Colleen, and their son.  He reviewed the records kept by OCS and the family's counselors.  He was qualified as an expert in child custody recommendations and mental health issues.  He based his recommendation on his in-person interactions with the parties, his review of relevant documents, and his expertise.  His testimony was probative of the parties' relative parenting abilities and the court did not err in considering it.

---

[13]     *See Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1130 n.3 (Alaska 1994).

Adam also argues that the superior court erred in crediting the testimony of employees of Fairbanks Counseling and Adoption. When Galanos cited the center's records as evidence of Adam's behavioral issues, Adam objected on the ground that "I never spoke to them ever once. They don't know who I am." But even if Adam's unsworn factual assertion — made in the context of a spoken objection — was sufficient to create a factual dispute as to the veracity of the counselors' testimony, the superior court did not clearly err in finding that Adam had been seen by the center. Both counselors testified that they had personally met with Adam, and they provided details of the timing and duration of their visits. Huffaker testified that the center had recorded 62.75 hours of in-home consultation with Adam and Colleen in late 2006 and early 2007. Lewis confirmed that he had met with Adam twice in February 2007. The superior court found the counselors' testimony to be generally "credible and persuasive." It did not clearly err when it chose to credit the sworn testimony of the two counselors over Adam's unsworn denial that the counseling had ever occurred.

Adam also appears to argue that the superior court clearly erred in ignoring the testimony of Dana Pictou, a clinician at a behavioral health clinic. Pictou testified at an earlier proceeding in 2008 that Adam had once sought help from Pictou's clinic for dealing with his grief after witnessing a fatal accident. According to Adam, Pictou testified that psychiatrists at the clinic found him to be "stable and normal." But in fact Pictou merely testified that Adam had consulted with two other psychiatrists at the clinic and that neither recommended any continuing course of anxiety medication. He did not testify that Adam was "stable and normal," as Adam contends. The superior court did not clearly err when it failed to cite this ambiguous, four-year-old testimony as evidence of Adam's mental stability, especially given the overwhelming and contemporaneous evidence that Adam continued to have serious mental health issues.

**2. Evidence of violence and substance abuse in Colleen's household**

Adam also argues that the superior court abused its discretion by not considering "all issues [regarding the child's] safety with Colleen Sackinger and Joseph Sackinger." We again find that the superior court did not abuse its discretion and adequately considered the relevant facts.

Adam first contends that the superior court ignored issues of violence in the Sackinger household. But although the superior court did not discuss the specific allegations of domestic abuse, it did acknowledge that Colleen had once obtained a short-term domestic violence restraining order against Joseph; it found that Colleen had attended counseling and support groups to deal with her history of abusive relationships and had thus "obtained the protective capacity she needs to recognize potential domestic violence and to be a protective parent for her children"; and it found that Joseph had successfully co-parented his other children. The court further observed that OCS considered Joseph to be "a safe placement" and that there was no evidence he was "presently a danger to his children." Given the careful consideration the superior court gave to this issue and given its resultant findings of fact, we see no abuse of discretion in the way it weighed the domestic violence in Colleen's past.

Adam further argues, mistakenly, that the superior court "totally ignored" Colleen's past drug use. The superior court acknowledged that Colleen used drugs in the past, but it also cited testimony that she was in "full remission" and that she did not "presently ha[ve] either a drug or alcohol problem." Both Galanos and Colleen testified to that effect, and it was not clear error for the superior court to credit their testimony.

Adam also argues that the court erred by ignoring testimony from 2009 that Colleen had attacked him in front of their son. Adam apparently refers to the 2008 testimony of a neighbor who witnessed an argument between Adam and Colleen. But the log notes from that earlier hearing indicate that while the neighbor saw both parties

shouting at each other, he "did not witness any physical stuff," nor did he "see anybody hit anybody." Even if Adam had relied on this testimony during the custody trial — and he does not claim that he did — it would not have been clear error for the superior court to reject it as evidence of domestic violence perpetrated by Colleen against Adam.[14]

Adam appears to argue in addition that the superior court erred in concluding that the domestic violence presumption against custody applied to him, because in a hearing held after the custody trial Colleen admitted that Adam had never physically assaulted her. But if Adam hoped to attack the validity of the custody order based on newly discovered evidence, the proper means for doing so was through a motion for either a new trial under Alaska Civil Rule 59 or relief from judgment under Alaska Civil Rule 60(b). This court will not weigh new evidence in the first instance.[15] Any such motion would likely have been futile in any event; a successful post-judgment attack based on newly discovered evidence must present evidence that was not available at the time of trial,[16] and Colleen was present and testified at trial. Adam did not cross-examine her because he had voluntarily absented himself from the proceedings.[17] The

---

[14]     The superior court also ruled that Adam "waived the opportunity" to present allegations of domestic violence against Colleen "by voluntarily absenting himself from trial," an independent basis for rejecting Adam's argument on this issue.

[15]     *See Millette* at 261 (quoting *Ebertz* at 646).

[16]     *See* Alaska R. Civ. P. 60(b); *State, ex rel. Palmer Supply Co. v. Walsh & Co.*, 575 P.2d 1213, 1221 (Alaska 1978).

[17]     Again, there is an alternative and independent basis for affirming the superior court's decision of this issue: Adam's claim that he never physically assaulted Colleen is irrelevant because the court's finding that he had committed domestic violence rested on the incidents in which he destroyed her property and placed her in *fear* of physical injury. *See, e.g.*, *Stephanie F. v. George C.*, 270 P.3d 737, 750 n.35 (Alaska 2012) ("Placing another person in fear of imminent physical injury 'by words or other
(continued...)

superior court did not err in its application of the statutory presumption against Adam.

**D.      The Superior Court Did Not Abuse Its Discretion By Requiring That Adam Undergo A Psychological Evaluation Before Having Unsupervised Visitation.**

Adam takes issue with the superior court's requirement that he undergo a psychological evaluation before he is allowed to have unsupervised visitation with his son. While not directly refuting the reasons for this requirement, Adam contends that the superior court showed bias when it failed to impose a similar requirement on Colleen.

This argument is without merit for two reasons. First, Colleen had already undergone a psychological evaluation voluntarily, after the custody investigator recommended that each parent have one. Adam refused. Second, the court's other findings about the parents' relative capacities to care for their son justified the court's continued concern. The superior court found that Adam was likely to surround his son with "an atmosphere of conflict, paranoia, upset, anger[,] and stress if [he did] not obtain mental health treatment," whereas the court credited Galanos's testimony that there were "no concerns about Ms. Sackinger's capability or willingness to meet[] [the child's] needs." The court's imposition of this condition on Adam, and not on Colleen, was well supported by the evidence and not an abuse of discretion.

**E.      The Judge Did Not Abuse His Discretion By Denying The Motion To Disqualify Him.**

Finally, Adam argues that Judge Lyle should have disqualified himself because of his obvious bias against Adam, citing the judge's failure to order further discovery from Colleen, his finding that Adam was faking the symptoms of his illness, and his reliance on Galanos's testimony about Adam's mental health. Having made

---

[17](...continued)
conduct' is assault. . . . Assault is within the definition of 'domestic violence.' " (citing AS 25.90.010 and AS 18.66.990(3)(A))).

several unsuccessful attempts to recuse Judge Lyle before trial, Adam made another oral request in the midst of trial, apparently in response to the judge's repeated observations that Adam was feigning his illness and the judge's admonition that trial would continue regardless of whether Adam remained in the courtroom. But "[d]isqualification was never intended to enable a discontented litigant to oust a judge because of adverse rulings made."[18] "Mere evidence that a judge has exercised his judicial discretion in a particular way is not sufficient to require disqualification."[19] Having upheld the various rulings that Adam claims were the result of judicial bias, we conclude that the judge, under an objective standard, did not appear biased against Adam and did not abuse his discretion in declining to disqualify himself.

## V.      CONCLUSION

We AFFIRM the superior court's custody decision.

---

[18]      *Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002 )(footnote and internal quotation marks omitted).

[19]      *State v. City of Anchorage*, 513 P.2d 1104, 1112 (Alaska 1973), *overruled on other grounds by State v. Alex*, 646 P.2d 203, 208 n.4 (Alaska 1982) (alteration and internal qutoation marks omitted).