NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of<br><br>ALONZO G. | )<br>) Supreme Court No. S-18892<br>)<br>) Superior Court No. 3AN-23-01770 PR<br>)<br>) <u>MEMORANDUM OPINION</u><br>)     <u>AND JUDGMENT</u>*<br>)<br>) No. 2090 – May 21, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf Zeman, Judge.

Appearances: Julia Bedell, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for Alonzo G. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A man was involuntarily committed to a psychiatric hospital for 90 days. In its commitment order the superior court found by clear and convincing evidence that there were no feasible less restrictive treatment options available. The man challenges this finding. Because the court properly considered the feasibility of less restrictive

---

\*      Entered under Alaska Appellate Rule 214.

alternatives to commitment, and because we see no error in the court's determination, we affirm the commitment order.

## II.    FACTS AND PROCEEDINGS

### A.    Alonzo G. Is Detained And Taken Into Emergency Custody.

In August 2023 Alonzo G.[1] attacked his uncle. Alonzo was subsequently arrested. A clinician at the jail evaluated him and described him as being "[p]aranoid, anxious, suspicious, delusional, uncooperative, malodorous, unkempt," and displaying "disorganized thoughts, pressured speech, [and] sporadic eye contact." Believing Alonzo to be gravely disabled, the clinician petitioned for Alonzo to be hospitalized for further evaluation, and the court granted the petition for his admission to the Alaska Psychiatric Institute (API). The psychiatrist at API diagnosed Alonzo with schizophrenia, paranoid type.

### B.    Alonzo Is Committed Following A 30-Day Commitment Hearing.

The psychiatrist at API petitioned for a 30-day commitment. The petition alleged that Alonzo had threatened a nurse, had paranoid thoughts and grandiose delusions, and was refusing to take medication. A superior court master held a commitment hearing the same day that the petition was filed.

During the hearing, the API psychiatrist testified that upon arrival, Alonzo was delusional, responded to internal stimuli, and had threatened to slit an intake nurse's throat if the nurse touched him. He also said Alonzo was not reliably taking medication because he was paranoid about people "touch[ing]" his medications and believed someone had changed them. The psychiatrist indicated that Alonzo said he would take medication from "Fiona," but API searched in Anchorage to find a provider named Fiona and could not identify one. Overall, the psychiatrist believed that Alonzo's symptoms rendered him gravely disabled.

---

[1]    We use a pseudonym to protect Alonzo's privacy.

Alonzo also made a statement to the court. His statement was consistent with the symptoms and beliefs described by the psychiatrist.

The master found that the State met its burden to prove that Alonzo was mentally ill and gravely disabled but had failed to demonstrate that he was likely to cause harm to others. The master also noted that due to Alonzo's highly delusional thinking, she had concerns about him obtaining "shelter and food" if released from API. The master determined that Alonzo was gravely disabled pursuant to AS 47.30.915(11)(B),[2] found that API was an appropriate treatment facility, and found that there were no less restrictive alternatives available that would adequately protect Alonzo and the public. The master recommended a 30-day commitment order, which was subsequently approved by the superior court.

### C. Alonzo G. Is Committed Following A 90-Day Commitment Hearing.

A month later the psychiatrist at API petitioned for a 90-day commitment, asserting that Alonzo continued to be gravely disabled, was likely to cause harm to others due to his history of violence, and was unable to participate in discharge planning due to his delusional thinking. A superior court master held a hearing on the petition, during which the psychiatrist, Alonzo's parents, and Alonzo all testified.

Alonzo's father testified that he had witnessed Alonzo's assault on his uncle, which included Alonzo throwing his uncle to the ground and placing him in a chokehold. Alonzo's mother was sworn in to testify, but the call abruptly ended after she stated her name.

The psychiatrist testified that Alonzo was eating, sleeping, and showering while at API, but only with significant prompting, and that he had been unable to engage

---

[2] In 2022, the revisor redesignated AS 47.30.915(9) to AS 47.30.915(11). *See* Revisor's notes, AS 47.30.915. While Alonzo's order was signed in 2023, it appears the court referenced the previous version of the statute. Nevertheless, we cite to AS 47.30.915(11) for the definition of gravely disabled, as that is the numeration of the statute at the time of Alonzo's evaluations, as well as today.

in discharge planning. He said that Alonzo's diagnosis of schizophrenia, paranoid type, had not changed, and that his delusions remained the same "but the intensity of those delusions ha[d] decreased." He also said Alonzo was partially compliant with medication as he had been taking a low dose of a medication that did not "fully stabilize[]" him or fully treat his paranoia and delusions. However, Alonzo refused other medications that the psychiatrist believed would be more successful, including a medication Alonzo's parents had indicated he had done well on in the past. API continued to try to find the "Fiona" Alonzo identified as the only provider from whom he would take medications, to no avail.

API was able to determine that Alonzo had last received medication on an outpatient basis from Alaska Behavioral Health. API wanted Alonzo to sign a release of information (ROI) so API could contact Alaska Behavioral Health and help coordinate Alonzo's care there, but he refused. The psychiatrist did not think Alonzo would be able to coordinate or comply with an outpatient treatment plan without API's help and instead believed API was an appropriate facility for Alonzo to make further progress in his treatment before he could pursue outpatient treatment.

The psychiatrist further testified that he was concerned about the risk that Alonzo would become violent if released, particularly given his attack on his uncle, his belief that he was in the military, and his reactivity when his "delusions and paranoia . . . kick[ed] in." Relatedly, the psychiatrist said Alonzo's mother had indicated that his family was "really afraid of him" when he stopped taking medication.

Alonzo's testimony was consistent with the psychiatrist's account of his delusional thinking. In particular, Alonzo said he had attacked his uncle because he believed that his uncle was trying to sexually assault Alonzo's girlfriend and was a member of two cults. Alonzo explained that he was a member of a militia group and that he had to stop his uncle.

The master recommended Alonzo's 90-day commitment, finding by clear and convincing evidence that: Alonzo presented a risk of harm to others because he

was not fully stabilized and his statements to the court indicated that he felt justified in attacking his uncle; Alonzo was gravely disabled under AS 47.30.915(11)(A) and (B); there were no feasible less restrictive treatment options available because Alonzo would not sign an ROI for API to coordinate care with outpatient treatment, and was unlikely to return on his own; and API was an appropriate treatment facility where Alonzo had already shown improvement. Alonzo did not object to the master's recommendation, and the superior court approved the 90-day commitment order.

Alonzo now appeals the court's determination that there were no feasible less restrictive treatment alternatives to the 90-day commitment, contending that the State failed to demonstrate that it considered alternatives to commitment and that the superior court's least restrictive alternative analysis is thus unsupported by the evidence.

## III. STANDARD OF REVIEW

We review "[f]actual findings in involuntary commitment proceedings . . . for clear error, and we overturn these findings only where a review of the record leaves us 'with a definite and firm conviction that a mistake has been made.' "[3] We "grant especially great deference when the trial court's factual findings require weighing the credibility of witnesses and conflicting oral testimony."[4] Whether factual findings meet statutory standards for involuntary commitment is a question of law to which we apply our independent judgment;[5] however, where neither party has objected to a master's relevant findings and recommended conclusions, and the

---

[3] *In re Hospitalization of Stephen O.*, 314 P.3d 1185, 1191 (Alaska 2013) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007), *overruled on other grounds by In re Hospitalization of Naomi B.*, 435 P.3d 918, 929 (Alaska 2019)).

[4] *In re Hospitalization of Jeffrey E.*, 281 P.3d 84, 88 (Alaska 2012).

[5] *In re Naomi B.*, 435 P.3d at 924.

master's conclusions are adopted by the superior court, we review those conclusions for plain error.[6]

## IV. DISCUSSION

Alonzo challenges the superior court's 90-day commitment order on two bases. First, he argues that the court erred in finding that the State considered less restrictive alternatives. Second, he argues that the court erred in determining that there were no less restrictive alternatives than commitment at API that could meet Alonzo's needs. Because we conclude that the State put on evidence that it considered alternatives to commitment and that the court's decision was supported by sufficient evidence, we affirm the 90-day commitment order.

The least restrictive alternative requirement is based in both the Alaska Constitution and state statute. Constitutionally, we have categorized "involuntary commitment for a mental illness as a 'massive curtailment of liberty' that demands due process of law."[7] "Constitutional rights extend equally to mentally ill persons so that the mentally ill are not treated as persons of lesser status or dignity because of their

---

[6] *In re Hospitalization of Carter K.*, 557 P.3d 755, 761-62 (Alaska 2024) (holding plain error standard applies where no party objects to master's recommendations prior to superior court determination); *see also In re Hospitalization of Connor J.*, 440 P.3d 159, 163 (Alaska 2019) ("We review issues raised for the first time on appeal for plain error."). Though no party raised questions regarding the standard of review on appeal, we observe that it is appropriate to consider Alonzo's arguments under a plain error standard of review here, where neither party objected to the master's findings or recommended conclusions regarding the less restrictive alternative analysis prior to consideration and approval by the superior court. Given that the parties did not litigate this issue regarding standard of review, however, we further observe that the standard of review is not determinative here and that the superior court's decision survives review under either standard.

[7] *In re Naomi B.*, 435 P.3d at 931 (quoting *Wetherhorn*, 156 P.3d at 375-76).

illness."**8**   However, "when a person has been found to be gravely disabled . . . the State's power of *parens patriae* authorizes it to commit [the person] for involuntary treatment."**9**  And "when a person has been found likely to cause harm to others . . . the State has a compelling interest in protecting the public, grounded in its police power."**10**  Statutorily, an important principle of civil commitment in Alaska is to treat people "in the least restrictive . . . environment consistent with their treatment needs."**11**  We have recognized:

> At the very least, a finding that there is no less restrictive alternative must include a determination whether the State has considered specific less restrictive treatment options. And, if so, why those alternatives were infeasible and inadequate to protect the respondent and the public, and provide for the respondent's treatment needs.[**12**]

Alonzo argues that the State failed to put on evidence, and the superior court failed to make sufficient findings, regarding whether there were alternatives less restrictive than commitment at API that could have met his treatment needs.  But, unlike cases where "the State did not discuss or explore *any* treatment alternatives,"**13** the State here demonstrated that it had considered possible outpatient treatment options as less restrictive alternatives to commitment.  But given Alonzo's refusal to sign an ROI for his past outpatient treatment provider, as well as API's determination that Alonzo could

---

**8**      *Id.* (quoting *Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 248 (Alaska 2006) (internal quotation marks omitted).

**9**      *Id.* (quoting *E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101, 1108 n.24 (Alaska 2009), *abrogated on other grounds by In re Hospitalization of Kara K.*, 555 P.3d 29, 39 (Alaska 2024)).

**10**     *Id.* (citing *Wetherhorn*, 156 P.3d at 376 n.13).

**11**     AS 47.30.655(2).

**12**     *In re Hospitalization of Declan P.*, 538 P.3d 318, 326-27 (Alaska 2023).

**13**     *Id.* at 325 (emphasis in original).

not coordinate or comply with outpatient care on his own, the State concluded that outpatient treatment was infeasible. API staff also tried to locate a provider with whom Alonzo said he would work, and tried to engage Alonzo in discharge planning, but both attempts were unsuccessful.

This testimony supports the court's finding that available outpatient treatment options would not meet Alonzo's needs, especially given concerns about the danger he posed to others. The API psychiatrist testified regarding his concern that, given Alonzo's delusional thinking — which was still ongoing at the time of the hearing — he would become violent if released from API. Indeed, the court concluded that Alonzo presented a risk of harm to others because he was not fully stabilized at the time of the hearing and his statements to the court indicated that he felt justified in attacking his uncle — a determination that Alonzo does not appeal here.

In addition to his general argument that the superior court erred in its analysis of potential less restrictive alternatives, Alonzo urges in particular that he should have been able to return to his parents' care rather than remain committed. But, as with other alternatives, the evidence offered during the 90-day hearing demonstrated that this was not a viable option at the time. Unlike in *Sergio F.*, where "the master found that [Sergio] was not dangerous and was willing to continue taking medication and seek outpatient treatment,"[14] the psychiatrist testified to the opposite in this case. And Alonzo himself made paranoid statements to the court that called into question his medication compliance and showed that he continued to experience the delusions that motivated his assault on his uncle a month prior. The court specifically noted that those ongoing delusions were evident during the hearing. The psychiatrist testified that Alonzo was only partially compliant with medication that did not "fully stabilize[]" him or fully treat his paranoia and delusions, because Alonzo refused other medications that

---

[14] *In re Hospitalization of Sergio F.*, 529 P.3d 74, 81 (Alaska 2023).

the psychiatrist believed would be more successful. The psychiatrist also testified that Alonzo's mother reported that the family was "really afraid of him" when he was off of his medication.[15] The court therefore did not err in declining to consider Alonzo's return to his parents' care as a viable alternative at the time of the hearing.

Alonzo also argues that the State effectively kept "Alonzo at API solely based on the hope that he [would] change his mind about refusing" a medication recommended by the psychiatrist, but this argument is similarly unpersuasive. The psychiatrist testified that Alonzo should remain at API because he benefited from the structured environment there, and because the hospital needed to work with him to "make further progress," including by getting "*the same* medication [he agreed to take] working . . . better" or possibly through other medications or therapies. (Emphasis added.)

Although Alonzo points to contradictory evidence to undermine the court's findings, the State was not required to disprove every theoretical alternative treatment option,[16] and we "grant especially great deference when the trial court's factual findings require weighing the credibility of witnesses and conflicting oral testimony."[17] Here the court weighed conflicting evidence when it made its oral and written findings, and those findings are supported by the record. For instance, although

---

[15]  While this statement would be hearsay if offered for its truth, Alonzo's attorney did not object to the testimony, and the statement was therefore admissible. *See Rusenstrom v. Rusenstrom*, 981 P.2d 558, 560 (Alaska 1999) (explaining that hearsay evidence is normally admissible if there is no objection). Even if there had been a hearsay objection, the testimony would still be admissible evidence of the information that the State gathered and considered regarding the viability of less restrictive alternatives to commitment.

[16]  *In re Sergio F.*, 529 P.3d at 80 ("The State need not 'prove the unavailability of every imaginable alternative.' " (quoting *In re Hospitalization of Vern H.*, 486 P.3d 1123, 1131 n.31 (Alaska 2021))).

[17]  *In re Hospitalization of Jeffrey E.*, 281 P.3d 84, 88 (Alaska 2012) (quoting *In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011)).

Alonzo points to the psychiatrist's testimony that he was eating and sleeping while at API to argue he should not have been involuntarily committed, the court specifically noted that it "found [the psychiatrist] credible" regarding the fact that Alonzo's success in a structured environment "does not equate to doing well outside of API." Similarly, Alonzo asserts that his "desire to work with his previous counselor speak[s] to his ability to obtain treatment outside of API." But API was unable to locate the provider based on the limited details provided by Alonzo and his parents, and since the provider in question is the only person Alonzo said he would take medication from, this alternative was not feasible.[18] The mixed evidence in the record does not establish any error in the court's conclusion that there were no viable less restrictive alternatives to API.

Overall, despite Alonzo's attempts to highlight conflicting evidence, the superior court's findings and decision were supported by the record. We see no error, plain or otherwise, in the court's determination that API was the least restrictive treatment option available to Alonzo at the time of his 90-day commitment hearing.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the 90-day commitment order in this case.

---

**18** *See In re Hospitalization of Naomi B.*, 435 P.3d 918, 936 (Alaska 2019) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 185 (Alaska 2009) (stating proposed alternative "must actually be available, meaning that it is feasible and would actually satisfy the compelling state interests that justify the proposed state action")).